UNION TRACTION COMPANY *v.* ALSTADT.

[No. 24,674. Filed May, 16, 1924. Rehearing denied November 19, 1924.]

1. CARRIERS.—*Pleading.—Relation of Carrier and Passenger.— Sufficiency of Allegation.*—In an action for injuries sustained in the collision of a train with a street car on which the appellee was riding, allegations that he boarded one of appellant's cars at a certain outpoint in the city bound for the center of the city, when the car was stopped at a regular stopping place to take on passengers and was seated as a passenger when the collision occurred, sufficiently disclosed the relation of carrier and passenger even though the statement that he was a passenger was a conclusion, and the lack of an averment that the appellee paid or offered to pay his fare did not destroy the force of the other allegations. p. 393.

2. CARRIERS.—*Pleading.—Relation of Carrier and Passenger.—* While the question on demurrer as to whether the relation of carrier and passenger exists as a matter of law is always determined from the pleaded facts and circumstances, yet facts shown by, conclusions and participial expressions will be given the same force and effect as those directly stated. p. 393.

3. CARRIERS.—*Relation of Carrier and Passenger.—Boarding, Car With Intention Not to Pay Fare.*—Where one boards a street car without paying any, fare and without offering or intending to pay a fare, the relation of carrier and passenger does not exist and the carrier owes him no duty, other than not to wilfully injure him. p. 395.

4. TRIAL.—*Refusal of Instructions Already, Covered.*—It is not error for the court to refuse an instruction when the subject thereof is fully covered by instructions given. p. 396.

5. CARRIERS.—*Liability of Street Car Company to Passenger.— Collision of Car with Train.*—Where separate acts of negli-

gence by a railroad and a street car company, were concurrent in time and place in injuring a passenger of the street car company, each company is jointly and severally liable for the whole injury.   p. 396.

6.   CARRIERS.—*Res Ipsa Loquitur.*—*Backing of Railroad Cars over Street Car Track.*—The doctrine *res ipsa loquitur* was not applicable to the act of backing railroad cars over a street railway crossing which resulted in a collision between a street car and the train, and the injury of a passenger on the street car, since the railroad not being the carrier was bound only to the exercise of ordinary care.   p. 398.

7.   CARRIERS.—*Instructions.*—*Duty of Railroad to Give Timely Warning at Crossings.*—In an action by one who was injured by the collision of a railroad train and a street railway car at a crossing, brought against the street railway company and the Director General of railroads, an instruction that if the persons operating the locomotive and the cut of cars failed to send someone to the crossing in advance of the moving cars, such failure would not necessarily constitute negligence, as the railroad was only required to give reasonable and timely notice of the approach of the cars to the crossing, was not open to objection by the street railway company.   p. 399.

8.   DAMAGES.—*Instructions.*—*Damages for Agony of Injured Person.*—In an action by a passenger on a street car injured in a collision between the car and a locomotive and cut of cars the evidence presented showed that the passenger pinned under a thirty-five ton street car was in agony and in a perilous position and warranted an instruction that if the injured party was in a perilous position by the negligence of the defendant, the injured party's agony while in that perilous position might be considered in assessing damages.   p. 400.

9.   DAMAGES.—*Allegation as to Mental Suffering.*—*Admissibility of Evidence.*—Under an allegation, in an action by one injured in a collision between a street car on which he was a passenger and a railroad train, that his nervous system was shocked by the horror of his situation while he lay for two hours under the wreckage expecting every minute to be crushed to death, evidence was admissible to prove not only physical injuries and pain, but mental suffering and peril of which he was cognizant immediately preceding the collision and injury, as well as while he was under the wrecked car.   p. 401.

10.   DAMAGES.—*Allowance for Peril.*—"*Suffering of Mind and Body.*"—Peril is not necessarily included in the words "suffering of mind and body," and the allowance of damages for peril resulting in injury is not to be regarded as double com-

pensation on the theory that such compensation is covered by an allowance for pain and suffering caused by the injuries. p. 402.

11. DAMAGES.—*Question of Excessive Damages.*—An award of five thousand dollars to a man fifty-one years old who was a passenger on a street railway car which collided with a locomotive and a cut of cars was not excessive, when the injuries he received, consisted of four broken ribs, a floating rib torn loose, injuries to his spine and neck, cuts on his head, and a hole torn in his ankle, as a result of which he was in the hospital three weeks, up and down for the next seven weeks, when he paid for a nurse at twenty-five dollars a week, a hospital bill of eighteen dollars, a doctor's bill of fifty-three dollars, lost twenty-five pounds, and at time of trial, eighteen months later, was still suffering from pains in his breast, neck, back and sides. p. 403.

From Randolph Circuit Court; *Theodore Shockney,* Special Judge.

Action by Daniel B. Alstadt against the Union Traction Company of Indiana and the Director General of railroads. From a judgment for the Director General of railroads, and for the plaintiff against the Union Traction Company of Indiana, the latter appeals. (Transferred from the Appellate Court under §1394, cl. 2, Burns 1914.) *Affirmed.*

*J. A. VanOsdol, Warner & Warner* and *Macy & Goodrich,* for appellant.

*Claude C. Ball* and *E. R. Temple,* for appellee.

MYERS, J.—This was an action by appellee to recover damages for personal injuries sustained by him while riding on a street car operated by appellant as the result of a collision between the street car and a cut of freight cars of the Lake Erie and Western Railroad Company. Trial was had before a jury, and verdict for the defendant Director General of Railroads and in favor of appellee against appellant for $5,000. The judgment was in accordance with the verdict. For a reversal of that judgment appellant appealed, and has

assigned as errors the overruling of its demurrer to the complaint, and the overruling of its motion for a new trial.

Appellant insists that the complaint fails to state facts showing that appellee was a passenger upon the street car, in that it failed to allege that the car, at the point where appellee boarded it, was stopped to take on or let off passengers, or that appellee was lawfully on the car, or facts from which the court can say as a matter of law that the relationship between appellant and appellee was that of carrier and passenger. For the purposes of this contention, a mere reference to certain statements of the complaint will suffice to indicate the point involved.

The complaint alleged that on April 8, 1919, appellant was engaged in the business of operating street cars in the city of Muncie, Indiana, as a common carrier of passengers for hire; that it had tracks running practically north and south on Madison street intersecting tracks of the Cleveland, Cincinnati, Chicago and St. Louis Railroad Company and tracks of the Lake Erie and Western Railroad Company; that the tracks of the former railroad company were located about fifty feet south of the latter company's. tracks; that at that time and for some time prior thereto both of these railroads used their tracks for switching purposes and in the operation of their passenger and freight trains; "that he (appellee) boarded one of the passenger cars of the codefendant Union Traction Company of Indiana while same was stopped at a regular stopping place to take on passengers and which car was then and there bound for the center of said city and took a seat about the middle of said car on the west side thereof and remained thereon as a passenger until the same was wrecked as hereinafter stated"; that said street car was then controlled by a motorman and conductor in charge

of the car who were employees of appellant; "that while plaintiff was then a passenger on said car there were other passengers on said car"; that when the car reached Madison street it turned north and continued on that street until stopped south and near the Cleveland, Cincinnati, Chicago and St. Louis Railroad Company's tracks; that it was then the duty of the conductor in charge of the car to go forward to the Lake Erie and Western Railroad Company's tracks, look east and west and listen for approaching trains, which he negligently failed to do; that appellee was then and there injured "without any fault or negligence on his part and while he was seated as a passenger in said street car."

Appellant, in support of its insistences, cites the case of the *Ohio, etc., R. Co.* v. *Craucher* (1892), 132 Ind. 275, wherein it is said: "The allegation that he took passage to be carried from one station to another is a fact that made him a passenger." In the instant case the declaration that he boarded one of appellant's passenger cars at a certain outpoint in the city bound for the center of the city, when considered in the light of street car service, is a statement quite as broad and comprehensive as the one quoted from the case cited and held sufficient to disclose the relation of carrier and passenger. While the question on demurrer as to whether the relation of carrier and passenger exists as a matter of law is always determined from the pleaded facts and circumstances, yet the strict, positive and direct allegation rule has been greatly modified so that now facts shown by conclusions and participial expressions will be given the same force and effect as those directly stated. *Fauvre Coal Co.* v. *Kushner* (1919), 188 Ind. 314; *Rochester Bridge Co.* v. *McNeill* (1919), 188 Ind. 432; *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592; *Rodebaugh* v. *Rodebaugh* (1923), 79 Ind. App. 324, 138 N. E. 263.

From the complaint any one would readily understand that appellee was riding in one of appellant's passenger cars—a public conveyance—at the time of the alleged collision and injury. Moreover, it appears that while appellee was seated as a passenger and was being transported toward the center of the city of Muncie, the collision occurred by reason of the negligence of appellant's employees in charge of the car. If it be conceded that the statement of appellee that he was a "passenger" is a conclusion depending upon facts and circumstances showing him to be such, yet it will not do to say that the pleader's use of the word "passenger" was not correctly interpreted by appellant as meaning rightfully on the ill-fated car as a public conveyance of passengers subject to the rules governing such service.

It is alleged that the car was stopped at a regular stopping place to take on passengers. Appellee entered the car at that point and took a seat near the middle of the car. These facts alone as to the point in question would sustain the complaint as against the demurrer, according to the rule announced in *Hall* v. *Terre Haute Electric Co.* (1905), 38 Ind. App. 43; but it is said that there is no averment that appellee paid or offered to pay his fare. The absence of this allegation would not destroy the force of others to the effect that appellee was a passenger, nor relieve appellant of the duty of exercising care commensurate with the danger to which it subjected appellee in the operation of the car over the other railroad tracks. *Indianapolis Traction & Terminal Co.* v. *Lawson* (1906), 143 Fed. 834, 74 C. C. A. 630, 5 L. R. A. (N. S.) 721, 6 Ann. Cas. 666. It was not error to overrule the demurrer.

The refusal of the court to give appellant's tendered instructions Nos. 9, 10, 17 and 21, and in giving instructions Nos. 3, 4, 23, 24, 38 and 39, and that the dam-

Union Traction Co. v. Alstadt—195 Ind. 389.

ages assessed by the jury were excessive, are the causes assigned for a new trial.

A brief reference to instruction No. 9 refused, is sufficient to indicate its subject. If appellee boarded the street car intending to ride thereon without pay-
3. ing any fare, and without offering or intending to offer to pay any fare, the relation of carrier and passenger did not exist and appellant owed him no duty other than not to wilfully injure him. We deem it sufficient to say that the subject of this instruction was fully and correctly covered by instruction No. 10 given by the court on its own motion. The instruction given is in line with the rule announced in the following cases: *Citizens St. R. Co.* v. *Jolly* (1903), 161 Ind. 80; *Indianapolis Traction Co.* v. *Klentschy* (1907), 167 Ind. 598, 10 Ann. Cas. 869; *Hall* v. *Terre Haute Electric Co.*, *supra; Clark* v. *Southern R. Co.* (1918), 69 Ind. App. 697; *Malott* v. *Weston* (1912), 51 Ind. App. 572, 575; *Indianapolis Traction & Terminal Co.* v. *Lawson, supra; Ohio, etc., R. Co.* v. *Craucher, supra.*

The uncontradicted evidence showed that the street car upon which appellee was riding at the time of the collision stopped at Kirby avenue and Beacon street when and where appellee entered the car and was carried down Kirby avenue on to Madison street where it turned north along Madison, stopping near the Big Four tracks while a train on that road passed. Then the car proceeded across these tracks and on to the tracks of the Lake Erie where the collision occurred. Appellee testified that he had the car fare in his hand ready to turn over to the conductor who hurriedly passed by him without an offer to collect it. The conductor testified that he did not collect the car fare and that appellee did not offer to pay it. There was no evidence of refusal to pay fare.

It is not error to refuse an instruction, although a

correct statement of the law, when the subject thereof is fully covered by instructions given. *Public Utilities Co.* v. *Iverson* (1918), 187 Ind. 672, 681; *Yetter* v. *Yetter* (1915), 185 Ind. 206; *Breadheft* v. *Cleveland* (1915), 184 Ind. 130, 136; *Ginn* v. *State* (1903), 161 Ind. 292; *Lake Erie, etc., R. Co.* v. *Howarth* (1919), 73 Ind. App. 454.

Appellant insists that the court erred in refusing to give instruction No. 10. From appellant's points and authorities it would have us treat this instruction as proceeding upon the theory that liability for injury caused by the concurring negligence of two tort-feasors is joint and several. However, if the action be against one only, that one would not be protected by the concurring negligence of the other, or where, as here, the action is against both, the liability is joint. But, if the relation of carrier and passenger did not exist between appellant and appellee, then appellant would not be liable to appellee, although not in the exercise of due care. Our disposition of instruction No. 9 makes it unnecessary for us to further consider the passenger part of this instruction. Without stopping to recite the evidence before the jury in the instant case, it is sufficient to say that while the evidence tended to show separate acts of negligence by each of the defendants, yet they were concurrent in place and time in producing appellee's injuries. Thus, as said in *South Bend Mfg. Co.* v. *Liphart* (1895), 12 Ind. App. 185, 190, cited by appellant: "The case is analogous to that of an injury produced by the collision of two railroad trains under different ownership and management, caused by the concurring negligence of both companies. Each company is jointly and severally liable for the whole injury."

The court, of its own motion, gave five instructions, more or less pertaining to liability for damage from

concurring negligence. Of these, No. 34 especially presented to the jury clearly under what circumstances each of the defendants would be liable separately, and when jointly. There was no error in refusing instruction No. 10.

Instruction No. 17 was on the subject of appellant's codefendant's failure to exercise reasonable care to avoid collisions with street cars and travelers approaching or entering upon its crossings, although an ordinance of the city of Muncie required it to operate safety gates only until ten o'clock p. m. Instruction No. 21 was to the effect that the railroad train crew was guilty of.negligence authorizing a verdict for appellee if they negligently failed to signal the engineer to stop the train in time, or if they failed to have proper appliances for conducting air to the brakes of the various cars, or failed to have the air apparatus coupled up whereby the train could have been stopped after seeing the street car on the railroad tracks in time to have avoided the collision. It appears from the evidence that the collision and injury of appellee occurred some time after ten o'clock p. m. on April 8, 1919. There is no claim on the part of appellant's employees in charge of the car of any reliance upon the operation of safety gates by its codefendant. On the contrary, they claim to have stopped the car and that the conductor went forward and looked for an approaching train. The jury was instructed that if this was done and the approaching train could not be seen, then appellant would not be liable. Moreover, by instruction No. 7 the jury was told that if it found from the evidence that appellant was negligent in going on to the tracks of the railroad company at the time of the accident, but also found that the agents and servants of the latter company discovered the peril of appellant's car in time to have avoided the injury by the exercise of reasonable diligence and

it failed so to do, and such failure was the cause of the injury sued for, then it should find for appellant, notwithstanding it was negligent in entering upon the track crossing. The three instructions last mentioned, when considered together, might be criticized on the ground of stating the law too favorably to appellant. Furthermore, instructions Nos. 6, 9, 14, 15, 16, 17 and 27 covered every phase of refused instruction No. 21.

Instructions Nos. 3 and 4 are challenged on the ground that when they are considered in connection with instruction No. 34 they tend to confuse the jury. We do not so construe them.

By instruction No. 23 the jury was told, in substance, that the backing of the locomotive and cut of cars over the crossing was under all the circumstances a

**6.** question of fact and "if there was no evidence bearing on that subject, then you should find that the act of backing such locomotive and cut of cars was not negligent." Appellant objects to that part of the sentence quoted on the ground that the mere backing of the locomotive and cut of cars, by reason of the very situation itself, might be negligence and a question which should have been submitted to the jury. The doctrine of *res ipsa loquitur* does not apply to a case like this. Appellant's codefendant, not being the carrier, was bound only to the exercise of ordinary care in the management of its cars. It was not a case under the evidence to warrant the conclusion that the accident was due to circumstances which the exercise of ordinary care could not foresee and guard against; nor was there any foundation for a presumption of negligence on the part of the railroad company calling for an explanation. True, both defendants were charged with certain negligent acts, but the collision might have been due entirely to the fault of one party and not at all to the fault of the other. Both parties had a right to oper-

ate their cars across the street, but it cannot be said "that in the ordinary course of things a car does not collide with vehicles or persons except when there has been carelessness in the management of the car." *Loudoun* v. *Eighth Ave. R. Co.* (1900), 162 N. Y. 380, 386, 56 N. E. 988, 989.

Instruction No. 24, in effect, told the jury that if the persons operating the locomotive and cut of cars failed to send some one to the crossing in advance of the moving cars, such failure would not necessarily constitute negligence, as they were only required to give reasonable and timely notice of the approach of the cars to the crossing. If the admissions in the complaint that a man with a white lighted lantern was stationed on top of the east end of the cars, and that a lighted red lantern was on the east end thereof, together with any other facts in evidence, amounted to reasonable and timely notice of the approach of such locomotive and cut of cars, then the persons operating such locomotive were not required to send a man in advance for the purpose of giving notice of the approach of the locomotive and cars to the crossing. The objection urged to this instruction is that appellant was not bound by the admissions of the complaint, although the instruction would be correct as to appellee. Fairly construed, the instruction made it the duty of appellant's codefendant to give reasonable and timely notice of the approach of the locomotive and cut of cars to the crossing, regardless of the admissions in the complaint. It submitted to the jury the question of whether or not appellant's codefendant exercised reasonable care under all of the evidence to avoid the collision of which complaint is made. The objection is not sustained.

Instructions Nos. 38 and 39 had reference to the measure of damages. The particular clauses in these instructions to which objections are urged are: In No.

38, "if by said negligence the plaintiff was put in a perilous position you may consider his agony while in that position"; and in No. 39, "it will be proper for you to consider and determine what, if anything, he ought to receive for his agony and peril in the condition which the evidence disclosed to you he was in as the result of said collision." Appellant insists that these instructions assume that appellee was in agony because of his perilous position, when there was no proof of agony, and it not being admitted, the assumption invaded the province of the jury. Also, that to consider appellee's agony and peril carried the inference that appellee should receive something for his peril. In this connection it may be well to note that there was much evidence, and none to the contrary, that following the wreck, appellee was found under a thirty-five-ton street car, with the controller, weighing 200 pounds, resting on his chest, and reverse lever in his mouth which prevented him from speaking until it was taken out. When he would breathe the controller would gradually lower, or in other words, his strength for inhaling air gradually became weaker, allowing the weight to settle down. He was under the car in this condition for an hour and a half or an hour and three-quarters. A Mr. Curtis finally went under the car and held his head up, for in that position he could breathe easier. Curtis asked him who he was and he told him. He said: "I cannot breathe." "Oh, my God, get me out." His face and head were covered with blood. This witness remained with him until they began to pull the car over, when he came out. Four of his ribs were broken, his floating rib torn loose and pressed back, his spine and neck injured, face cut, several cuts on his head, and a hole torn in his ankle. Another witness testified that he told appellee that they would soon get him out, and he replied: "Hurry up"; that he was

moaning and conscious while under the car and when they took him out. Appellee testified that while he was under the car he was told: "Don't give up. We are going to get you out of here", and that he recognized that party's voice.

The evidence to which we have referred requires no comment from us to refute appellant's statement that there was no proof of agony or that appellee was

9. not in a perilous position. Appellant cites and seems to rely upon *Chicago, etc., R. Co.* v. *Fretz* (1909), 173 Ind. 519. The court in that case had under consideration an instruction authorizing the jury to take into account the peril of plaintiff's life in determining damages. In that case it was claimed "that peril of life, mere fright is not an element of damages, when unaccompanied by physical injury." The proposition thus asserted was not decided for the reason no such claim was pleaded. In the present case there was an allegation "that his (appellee's) nervous system was shocked by the horror of his situation while he lay for two hours under the wreckage expecting every minute to be crushed to death." Under this allegation, evidence was admissible to prove not only physical injuries and pain, but mental suffering and peril of which he was cognizant immediately preceding the collision and injury, as well as while he was under the wrecked car. Such evidence was received from which it appears that he saw the on-coming cut of cars when the same was five or six feet from the street car, and knew of the impending peril to his life which he was helpless to avoid; that he was conscious while under the car and in great mental anguish on account of his perilous situation. In the Fretz case the discovery of the train, injury and unconsciousness simultaneously occurred, so that an instruction allowing a recovery on account of

peril was held erroneous on the ground that there was no evidence upon which to base damages for peril.

In the case at bar but one inference can be drawn from the evidence relative to peril. Appellee was fastened in the wreck consciously recognizing 10. the imminent danger of losing his life. In the first place he had the shock from seeing the oncoming cut of cars and the impending danger, risk and hazard to his life which was plainly apparent, with no way of escaping the known jeopardy to life and limb from the collision which followed and which was the proximate cause of his injuries. As applied to the instant case, this court, in the case of *Terre Haute, etc., R. Co.* v. *Brunker* (1890), 128 Ind. 542, 552, well said: "It was clearly proper to consider the hazard and jeopardy in which he was placed, in other words, the peril to his life, and allow such damages as resulted therefrom in determining the damages which he sustained; and the suffering of both body and mind which he sustained by reason of the injury. It certainly seems to us that it cannot be contended with much force that when, under such circumstances, one's life is jeopardized by the negligent acts of another and injuries follow, as in this case, they are not liable for the damages sustained by the person by reason of being put in such a perilous position." We hold that peril to life which accompanies actual physical injury may be an element which the jury may consider in fixing damages. Peril is not necessarily included in the words "suffering of body and mind," nor should the allowance of damages for peril resulting in injury be regarded as double compensation upon the theory that such compensation is covered by an allowance for pain and suffering caused by the injuries. *United Coal Mining Co.* v. *Dougherty* (1911), 51 Ind. App. 165, 175; *Illinois Cent. R. Co.* v. *Nelson* (1914), 212 Fed. 69, 74, 128 C.

C. A. 525; *Purcell* v. *St. Paul City R. Co.* (1892), 48 Minn. 134, 50 N. W. 1034, 16 L. R. A. 203; *San Antonio, etc., R. Co.* v. *Corley* (1895), 87 Tex. 432, 29 S. W. 231.

After a full consideration of the challenged instructions given in connection with all of the evidence given in this cause, we have no hesitancy in holding that the court committed no error in giving them.

Lastly, appellant insists that the damages assessed by the jury were excessive. We have already referred to some of the evidence pertaining to appellee's injuries as they appeared immediately following the collision. We may add that appellee was fifty-one years old in January before he was hurt in the following April. He was a member of the police force in the city of Muncie, which position he had held for twenty-three years. He weighed 185 pounds and was in good health. After the wreck he was in bed three weeks, then up and down for seven weeks. His nurse's services were valued at twenty-five dollars per week, hospital bill eighteen dollars, and doctor bill fifty-three dollars. As bearing upon his physical condition at the time of the trial eighteen months later, it appears that he weighed 160 pounds and was still suffering from pains in his breast, neck, back and sides between his ribs and hips. His ribs which were broken and torn loose in the wreck were enlarged. His muscles just above his hips were invariably sore and the joints in his neck and spine were unnaturally large. His breathing was affected. His injured ankle was still painful and had never healed; his kidneys more active than before the accident; and his nervous system seriously affected for which he had been continuously taking treatment.

With this brief statement of the evidence indicating the basis for the jury's action in assessing damages, we are well convinced that the amount of damages was

not enhanced by prejudice, passion, partiality, corruption, or on account of any improper element. Hence, we must hold that the damages assessed by the jury were not excessive. *Kawneer Mfg. Co.* v. *Kalter* (1918), 187 Ind. 99, and cases there cited.

We have examined carefully the entire record in this case, especially the instructions given to the jury, and have reached the conclusion that the case was fairly and correctly submitted to the jury, and that the judgment should stand.

Judgment affirmed.