HOESEL *v.* CAIN ET AL.

KAHLER *v.* CAIN ET AL.

[Nos. 27,959, 27,960.  Filed February 29, 1944.  Rehearing denied March·30, 1944.]

332

334

*Stevens & Stevens, Delph L. McKesson,* and *Marshall F. Kizer,* all of Plymouth, *Louis A. Reidelbach,* of Winamac, and *Robert C. Hillis,* of Logansport, for appellants.

*Paul E. Reed* and *William J. Reed,* both of Knox, for appellee.

RICHMAN, J.—These cases are separate appeals from the same judgment and have been consolidated. Appellee Hannah Cain, by her next friend Calvin Cain, was plaintiff below. Appellants Hoesel and Kahler were the only defendants. She recovered a verdict of $10,000 for personal injuries on which judgment was entered against both appellants. They filed separate motions for new trial each of which was overruled.

In his motion Hoesel questions the sufficiency of the evidence to sustain the verdict against him. The complaint, which was in one paragraph, alleges that appellee, who was his guest, was injured in a collision between his car, one driven by Kahler and a third driven by an unnamed person who was not made a party. It proceeds upon the theory that Hoesel's wilful and wanton misconduct and Kahler's negligence concurred each proximately causing the collision and injury to appellee. There is no contention that she was guilty of any negligence. The evidence stated most strongly in support of the verdict against Hoesel is substantially as follows: Four cars containing thirteen young people in their late teens were being driven southward on U. S. Highway 35 from Royal Center to a street fair in Logansport about dusk in the evening of July 30, 1941. The collision occurred about three miles south of Royal Center. The first two cars each had four passengers. The third car was driven by Hoesel with Miss Cain and Richard Bonnell as passengers. The fourth was driven by Kahler with Madeline Maila as his passenger. The weather was fair and warm, the pavement dry and the road straight and level except that some distance south of the point of impact there was a dip which obscured cars approach-

ing from the south. Hoesel was familiar with the highway having used it frequently. The four cars, some with lights on, had been proceeding about 100 feet apart at a speed of fifty miles per hour. Hoesel attempted to pass a car going south. There is conflict in the evidence as to whether this was one of the four cars in the party or a strange car which they had overtaken. He "speeded up," drove completely into the left lane, saw the lights of a car approaching out of the dip, tried to get back into the right lane and in so doing applied his brakes causing the car to skid, first to the right and then to the left, and while so skidding, it was hit in the left rear by the left front of the Kahler car which remained in the right lane. The Hoesel car continued to skid toward the left lane where it was hit by the car approaching from the south. Bonnell was killed and appellee severely injured. The alleged wilful and wanton misconduct is that Hoesel drove into the left lane "knowing that due to the proximity of the oncoming car he could not pass the car ahead of him" and "attempted to pull back in the line of traffic . . . knowing the car in his rear was in such close proximity that a collision was probable." The word "knowing" gives vitality to these allegations. But there is no evidence that he knew the car was approaching from the south until his car had crossed the center line. After the Hoesel car drew out of the right line of traffic Kahler proceeded into the vacated space but there is no evidence that Hoesel knew that fact. His only warning that he was turning back was the red light when he applied his brakes. From this evidence the jury would have been warranted in concluding that Hoesel was negligent in not anticipating, before he crossed the center line, the possibility of encountering a car coming from the south, but without

his actual knowledge of its approach we are unable to persuade ourselves that the evidence supports a reasonable inference of his wilful and wanton misconduct. *Bedwell* v. *DeBolt* (1943), 221 Ind. 600, 50 N. E. (2d) 875; *Swinney* v. *Roler* (1943), 113 Ind. App. 367, 47 N. E. (2d) 846; *Albert McGann Securities Co.* v. *Coen* (1943), 114 Ind. App. 60, 48 N. E. (2d) 58.

When Hoesel turned into the wrong side of the road and saw the car approaching from the opposite direction in such close proximity that he could not ▮▮▮ pass, if he then had persisted in his course we could ascribe to him such conscious indifference to consequences as to constitute wanton misconduct. *Sanford* v. *Grady* (1934), 1 Cal. App. (2d) 365, 36 P. (2d) 652, was that kind of a case. But he did not persist in this course. Instead he tried to avoid the peril caused by his prior negligence. Knowing that the Kahler car had been following at a distance of 100 feet but unaware of its change of position Hoesel's attempt to regain his former place in the line of traffic may also have been negligent but affords no fair inference that he was then so indifferent to consequences that he can be charged either with intent or willingness to inflict injury. We are not aided by the cases of *Cole* v. *Morse* (1931), 85 N. H. 214, 155 A. 694, and *Powers* v. *Comerford* (1933), 283 Mass. 589, 186 N. E. 585, both of which apply the law of Massachusetts which postulates more than one degree of negligence. The doctrine of comparative negligence does not prevail in Indiana. Between ordinary negligence and wilfulness there is no middle ground. A wanton injury is in the same class with a wilful injury. The first Guest Act, ch. 201, Acts 1929, exempted the driver from liability to his guest "unless such accident shall have been intentional

upon the part of such . . . operator or caused by his reckless disregard of the rights of others." Even this language was construed as relieving from liability except "under circumstances when his action, or his failure to act, evinces an entire abandonment of any care, and a heedless indifference to results which may follow, and he recklessly takes the chance of an accident happening without intent that any occur." *Coconower* v. *Stoddard* (1932), 96 Ind. App. 287, 296, 182 N. E. 466. To justify recovery against Hoesel there must have been more than a failure to apprehend the danger of driving into the wrong lane of traffic. That was mere negligence. To have been guilty either of wilful or wanton misconduct he must have intentionally proceeded with knowledge of the peril or his conduct must have shown a conscious indifference upon his part as to whether or not his act would cause injury. His motion for a new trial was erroneously overruled.

Kahler's motion presents error in giving appellant's instructions numbered 9 and 10 as to inadequacy of brakes in the absence of evidence on the subject. The question was clearly presented by his oral objections under Rule 1-7. In the complaint he was charged with two acts of negligence: "A. That he did operate his vehicle at the high and unreasonable rate of speed of fifty miles per hour in the night time at a distance of twenty-five feet from the car proceeding in front of him," which speed was "unreasonable for the further reason that the brakes on" his car "were not in proper working order," and: B. That he "drove and operated his vehicle with defective brakes and with knowledge that the same were defective." The court gave appellee's instruction 6 stating in substance that she could recover if either of the alleged acts of negligence be established. Instruction 9 stated that if the jury found

that Kahler's car was "not equipped immediately prior to and at the time of the accident with brakes adequate to control the movement of and to stop said automobile" the jury might take such fact into consideration in determining the question of his negligence. The tenth quoted that part of Clause 7 (b) of § 47-2228, Burns' 1940 Replacement, which applies to vehicles driving 20 miles per hour and then stated that the jury might take these provisions into consideration in determining the question of negligence of Kahler. The only evidence which would possibly be thought to prove that the brakes on his car were defective is found in the testimony of Scott Graham, the town marshal of Francisville, who was working in a garage to which the car was taken for repairs. Two days after the accident Graham examined the car. He testified as follows:

"Q. Did you examine the brakes?

"A. Yes.

"Q. And just tell the Court and Jury what you found the condition to be?

"A. When you pushed them two-thirds of the way down to the floor board they took hold.

"Q. What kind of brakes?

"A. They were hydraulic.

"Q. If a person should press down on the brakes, leaving them there, would they apply to the car; would it apply the brakes?

"A. Any brakes?

"Q. No, the condition of these brakes?

"A. No, the condition they were, you would have to pump the brake up.

"Q. Tell us about that. Well that is all.

"A. Yes, sir."

Disregarding the unintelligible and speculative portion of this testimony the inference is not that the brakes were inadequate but that they were effective.

The giving of instructions on an issue not supported by evidence is always erroneous. But not always is the error reversible. The rule is stated by Judge Mitchell in *DeHaven* v. *Helvie, by Next Friend* (1890), 126 Ind. 82, 84, 25 N. E. 874, as follows:

"Where it can be said that an instruction which is not applicable to any evidence in the case resulted in no prejudice to the appellant, a reversal will not follow, but where it appears that the verdict of the jury may have been predicated upon such an instruction, it would be manifestly error to allow the verdict to stand."

See also *Chicago & Eastern Illinois Ry. Co.* v. *Whipking* (1930), 96 Ind. App. 167, 170 N. E. 578. We need not here collect the cases on the subject since the question in each case must be determined upon the record of that case. These were not mandatory instructions but they plainly authorized the jury to draw inferences of defective brakes without any factual basis. When the matter was called to the attention of counsel for appellee in oral argument he made the untenable assertion that the fact of a collision justified one of two inferences, either that Kahler at too high speed was following a car too closely or that the brakes on his car were faulty. This is an inept attempt to apply the doctrine of *res ipsa loquitur*. See Prosser on Torts, p. 299, citing *Union Traction Co. of Indiana* v. *Alstadt* (1934), 195 Ind. 389, 143 N. E. 879. Counsel may have made the same argument to the jurors or they may themselves have conceived that erroneous idea. We cannot say that they would have arrived at the same verdict if the instructions had not been given and therefore are con-

strained to hold that the error was prejudicial. *Chicago etc. R. Co.* v. *Whipking, supra.*

We have not overlooked appellee's contention that neither the evidence nor the oral objections to the instructions are in the record. The bill of exceptions containing the evidence and rulings of the court on admission or exclusion thereof has always been referred to as the "general bill of exceptions." The last sentence of Rule 1-7, 1940 Revision, authorizes inclusion therein of the oral objections to instructions as transcribed by the court reporter. This must be deemed to have modified the previous rule that only the transcript of the evidence could, without copying, be incorporated in the record. *Leach et al.* v. *Mattix, Administratrix* (1897), 149 Ind. 147, 48 N. E. 791, and *Campbell* v. *State* (1913), 179 Ind. 240, 100 N. E. 755, are therefore not applicable. (In this connection we call attention to Rule 2-3, 1943 Revision, which radically changes former rules as to bills of exceptions.) Appellee also contends that the certificate to the transcript in the Kahler appeal is not sufficient to identify the original bill of exceptions as a part of the record. If this were true, nevertheless we have before us an adequate certificate and record in the Hoesel appeal. There was no occasion for separate and almost identical records and the order of consolidation therefore assesses all the costs of Number 27960 equally against both appellants who should have collaborated in one appeal.

In the briefs and on oral argument the sufficiency of the complaint to withstand Kahler's demurrer for want of facts was the subject of debate. While our disposition of this appeal may result in the reframing of issues so as to make this a moot question nevertheless in order to avoid future contro-

versy we have concluded to give it some attention. It is argued that the allegation that Hoesel's wilful and wanton misconduct was the proximate cause of appellee's injury is conclusive as a matter of law that Kahler's negligence could not have been the proximate cause of such injury. Appellee says the question is not raised by the memorandum to the demurrer. We think it is but we doubt whether the argument here presented was made to the trial judge when he had the demurrer under consideration. The suggestion was apparently an afterthought coming from the subsequent decision in *Kizer* v. *Hazelett* (1943), 221 Ind. 575, 49 N. E. (2d) 543, 544, where after oral argument a similar contention was made but was expressly left open as unnecessary to our decision. Later in that opinion we suggested that where the driver of one car is guilty of wanton or wilful misconduct and the other of negligence it is hard to see why, for his own injuries received in the collision, the negligent driver should not recover from the other. This must be true because contributory negligence is no defense to an action for wilful injury. *Pennsylvania Co.* v. *Sinclair* (1873), 62 Ind. 301, 30 Am. Rep. 185; *Steinmetz* v. *Kelly* (1880), 72 Ind. 442, 37 Am. Rep. 170; *Terre Haute & Indianapolis R. Co.* v. *Graham* (1883), 95 Ind. 286, 48 Am. Rep. 719; *Brannen* v. *Kokomo, etc., Road Co.* (1888), 115 Ind. 115, 17 N. E. 202, 70 Am. Rep. 411; 38 Am. Juris., *Negligence,* § 178; Cooley on Torts (2d Ed.), 810; 1 Shearman & Redfield on Negligence (1941), §§ 381, 319. The rule was held applicable even where the action was under our former guest statute. *Coconower* v. *Stoddard* (1932), 96 Ind. App. 287, 182 N. E. 466, transfer denied. See also *Kizer* v. *Hazelett, supra; Miesmer* v. *Dillin* (1941), 69 Oh. App. 197, 43 N. E. (2d) 810; Harper, Law of Torts §§ 150, 151, Restatement of Law

of Torts, Negligence §§ 481, 482 (1) ; Lowndes, *Contributory Negligence* IIA, 22 Georgetown Law Journal 674; Prosser on Torts, p. 402; Bohlen's Studies in the Law of Torts, p. 529. Professor Bohlen in a footnote to his chapter entitled Contributory Negligence, p. 504, cites some cases thought to rationalize this rule on the theory of causation but his own conclusion seems to be summarized, in agreement with that of both Professor Harper and Professor Prosser in the following language, p. 528:

> "If the defendant's wrong be intentional, only consent, express or necessarily implied from the circumstances, will bar recovery. The defendant's intent to cause the harm must be met by the plaintiff's intent to suffer it. If it be an act deliberately done tending to the plaintiff's manifest injury, he must as deliberatley subject himself to it. If it be a mere inadvertence, a similar inadvertence will bar his recovery. Logically, therefore, the defense of contributory negligence should apply only when the gist of the alleged wrong is the defendant's failure to take care for the plaintiff's safety. So the unanimous current of decision is that when the defendant's wrong is something more than mere negligence—when it involves an intent to cause harm—contributory negligence is no defense.
>
> "When all is said, it may well be that in such case the defendant, in the language of the Year Books, 'is to be punished for his wrong,'—a wrong, in fact, quasi-criminal, not a mere breach of social duty."

Whatever may be the reason for the rule, we are satisfied that the rule itself is settled.

But from the fact that the negligent one of the two tort-feasors might for his injuries recover from the more culpable wrong-doer it does not follow that an innocent third person injured by the concurring acts of wrong-doing may not recover

from the one who was negligent. This is the question that was left open in *Kizer* v. *Hazelett, supra*. We are dealing with allegations of a complaint which specifically state that the conduct of each wrongdoer was the proximate cause of the injury to the innocent third person. The allegations assume that the collision was the result of both wrongful acts operating to the moment of impact.

Some of the cases which apparently hold that the wilful wrong-doing is not "expectable" may be explained upon the theory that the negligence had ceased before the wilful act took effect. This is true in the case of *Snyder* v. *R. R.* (1906), 36 Colo. 288, 85 P. 686:

> "If the defendant's conduct was a substantial factor in causing the plaintiff's loss, it follows that he will not be absolved from responsibility merely because other causes, such as the negligence of other persons, have contributed to the result. Thus where two vehicles collide and injure a bystander, or a passenger in one of them, each driver may be liable for the harm inflicted." Prosser on Torts, p. 324.

The same author, treating the subject of contribution, also says:

> "Where two or more causes combine to produce such a single result, incapable of any logical division, each may be a substantial factor in bringing about the loss, and if so, each may be charged with all of it. Here again the typical case is that of two vehicles which collide and injure a third person. The duties which are owed to the plaintiff by the defendants are separate, and may not be identical in character or scope, but entire liability rests upon the obvious fact that each has contributed to the single result, and that no rational division can be made."

Usually this principle is applied where the wrongful acts are of the same character. All of the illustrations under § 879 of Restatement of the Law of Torts ▮ are predicated on the negligence of each tort-feasor, though the statement itself is broad enough to include the factual situation confronting us. It reads: "Except as stated in § 881, each of two persons who is independently guilty of tortious conduct which is a substantial factor in causing a harm to another is liable for the entire harm, in the absence of a superseding cause." The second illustration reads: "A *negligently* knocks B into the street, the impact causing B no substantial harm. Before B can arise, however, he is negligently run over by C who is acting in the scope of his employment as D's servant. B is severely hurt thereby. For this harm B is entitled to a judgment for the entire amount of harm from A, C or D or all of them." (Italics ours.) If for the italicized word be substituted "wilfully" or "intentionally" why should not the rule be the same? In *Carlton* v. *Boudar* (1916), 118 Va. 521, 88 S. E. 174, one defendant was a common carrier charged with exercising the highest degree of care, the other liable only for ordinary negligence. Judgment against both was sustained. In *Blackwell* v. *American Film Co.* (1920), 48 Cal. App. 681, 192 P. 189, the action was founded on the concurring negligence of the two tort-feasors. Evidently contention was made that one was more culpable than the other, to which the court replied:

"When the question arises between two parties, who are jointly charged with negligence, it is only necessary to show that both contributed to the injury, notwithstanding the fact that one may have been wanton and reckless and that the other simply manifested want of ordinary caution. Although

the act of each defendant alone might not have caused the injury, there is no good reason why each defendant should not be liable for the damage caused by the different acts of all."

From *Eidson* v. *Maddox* (1943), 195 Ga. 641, 24 S. E. (2d) 895, we take this statement:

"It will not be disputed that all who join in the commission of a wrong resulting in injury are jointly and severally liable for the entire damage sustained, without regard to the degree of culpability of each. 62 C. J. 1131, §§ 44, 49. It is argued, however, that this principle relates only to the duty owing the injured party; and that it can not be applied in the instant case, because under the stricken amendment it was shown that as between the original wrong-doers, Maddox's negligence greatly preponderated. The answer to this argument, it seems to us, is that regardless of whose negligence produced the injury, the liability became equal. 'It is, and has long been, a generally recognized rule that there is no line of separation between the liability of joint tort-feasors. The tort is a thing integral and indivisible, and any claim for injuries arising therefrom runs through and embraces every part of the tort. The liability of one can not be carried into any portion of the joint tort that is not followed by an equal liability of the other tort-feasor.' 26 R. C. L. 763 § 13."

While some of these statements are dicta and founded on dicta, not decisions, in cited cases, nevertheless the reasoning is sound and supports our conclusion that the two different kinds of torts, one more culpable than the other, could concur to cause the "indivisible injury" to appellee. The demurrer was properly overruled.

Without having filed a motion for separate trial each appellant urges that the judgment be reversed because,

they say, the verdict was the result of confusion occasioned by the complicated issues. They cite *Kizer* v. *Hazelett, supra,* from which apparently they get the misconception that the several issues of wilful and negligent injury can never be fairly presented in one trial. In the latter part of that opinion we harmonized our holding with that of *Nelson* v. *Inland Motor Freight Co.* (1939), 60 Idaho 443, 92 P. 790, 793, by this statement:

> "The court weighed 'the policy of the law to limit the number of trials as far as possible' against the contention that the jury might be confused by the complicated issues and said that the 'relative merits of these conflicting contentions can very well be determined by the trial judge by an inspection of the pleadings.' The court recognized that the matter was within the trial court's discretion and would not be disturbed on appeal unless one of the parties had been prejudiced. We do not think this ruling is at variance with our conclusion in this case."

It should be added, however, that the inquiry is not limited to "an inspection of the pleadings" if by "pleadings" are meant only the complaint, answer and reply. Facts dehors these pleadings, if alleged in the motion and admitted or proved, may be considered in determining whether separate trials should be granted. Economy of time, money and effort requires, if practicable, that the whole controversy be determined by one trial but it is also important that issues peculiar to one defendant shall not be confused with the defense of the other to his prejudice. While the trial judge must weigh these opposing considerations and make the decision, his action may be reviewed. But in the absence of a motion he will not act since the parties, if they choose, may agree and will be deemed to have

consented to disposition of the whole controversy by one trial.

The first instruction given at appellee's request was unnecessarily prolix in detailing the contents of the pleadings without giving any clear conception as to what material averments were not admitted by both appellants and therefore remained for the jury's determination. By reciting the allegations of Hoesel's wanton or wilful misconduct and the first specification of Kahler's negligence, stating that each was alleged to be a proximate cause of appellee's injury and that verdict could be against either, neither or both appellants depending upon proof of the respective allegations, one reasonably short instruction could have clearly stated all the issues, including the extent of appellee's injuries and compensable damages. Both appellants seem to have ignored another infirmity in this instruction. After reciting the provisions of the complaint and the separate answers of appellants, including Hoesel's admission that Kahler was guilty of negligence and the latter's admission that his codefendant was guilty of wanton or wilful misconduct, the instruction was concluded with the following paragraph:

"Under the issues thus formed the plaintiff is not required to offer any evidence of any kind as to the separate allegations of her complaint which have been admitted by the respective answers of the defendants."

Neither appellant by admission could bind the other but nevertheless from the concluding paragraph the jury might have understood that the appellee was not required to prove either charge of misconduct. Such an instruction is palpably misleading and ought never to be given.

We deem it unnecessary to note other alleged errors since they are not likely to occur in another trial.

Judgment is reversed with instructions to sustain the motion for new trial of each of the appellants.

NOTE.—Reported in 53 N. E. (2d) 165.

ON PETITION FOR REHEARING.

RICHMAN, J.—In a petition for rehearing appellee questions only the validity of our holding that there was no evidence upon which instructions as to defective brakes might be based. The principal argument is that appellant Kahler testified that he was driving at the rate of 40 to 50 miles per hour and that he applied the brakes when distant 80 to 90 feet from the Hoesel car. Appellee then cites Paragraph 7 (b) of § 47-2228, Burns' 1940 Replacement, which provides that a motor vehicle equipped with four-wheel brakes traveling at 20 miles per hour must be capable of being stopped within 30 feet, or, as appellee says, "at a distance of one and one-half times its speed." Erroneously appellee then reasons that "a car going 50 miles per hour should have been equipped with brakes capable of stopping it within 75 feet . . .," (less than the distance between the two cars) and concludes that the brakes were inadequate. This fallacious argument was evidently feared by appellant Kahler when he was objecting to appellee's tendered instruction 10, which reads:

> "I further instruct you that on July 20, 1941, Section 47-2228, B. R. S. 1940 Replacement in part in substance provided that every motor vehicle should be capable at all times and under all conditions of loading, of being stopped on a dry, smooth, level road and free from loose material upon the application of the service (foot) brake when traveling twenty (20) miles per hour within a distance

of thirty (30) feet if such motor vehicle had brakes on all wheels.

"You may take the provisions herein set forth of such statute into consideration in determining the question of negligence if any, on the part of the defendant, Kahler."

The objection made in compliance with Rule 1-7 is in part as follows:

". . . that the instruction is misleading, in that it informs the Jury as to the distances in which a car must be able to stop; going twenty miles an hour; whereas, there is no evidence before the Jury that the Kahler car was at the time or any time in close proximity to the accident, traveling at twenty miles an hour; that it is further misleading in that it would let the jury believe, in fact would lead them to believe that a car travelling at twice the rate of speed, could stop in twice the distance, which would not be a correct inference or assumption for the Jury to draw.

"For the further reason that the statement is not complete and the part of the statute quoted is not complete, is only a part of it and is the part not applicable to the evidence in this case.

"For the further reason there has been no proof of defective brakes.

"And that in addition, any instruction concerning brakes or defective brakes would not in any way be applicable to the evidence in the case."

In writing the original opinion we thought it sufficient to say that this and another instruction were erroneously given because inapplicable to any evidence. But in view of appellee's present argument, which may have been made to the jury or may be made to another jury, we have given the whole subject further consideration.

A traffic engineer has said that "braking distance varies as the square of the speed; that is, if the speed is doubled, the stopping distance is quadrupled, and if the speed is trebled the stopping distance becomes nine times as great." J. S. Baker, author of Public Safety Memo. No. 22 of National Safety Council, Published July 1937 (Revised), Reprinted April, 1940. He says also that "the best present legislation regarding brakes is represented by Section 124 of 'The Uniform Act Regulating Traffic on Highways' (Act V) of the Fourth National Conference on Street and Highway Safety (1934) published by the Bureau of Public Roads, United States Department of Agriculture." This is the form of uniform act upon which ch. 48, Acts 1939, § 47-1801 et seq., Burns' 1940 Replacement, § 11189-11 et seq., Baldwin's Supp. 1939, is based. Paragraph 7 (b) of § 47-2228, Burns' 1940 Replacement, *supra*, referred to in the above instruction is substantially the same as § 124 (b) of the original uniform act quoted by Mr. Baker. He continues with the statement that "this model law requires 44.6% braking effort for" vehicles equipped with four-wheel brakes.

At page 95 in "Accident Investigation Manual" published in 1940 by the Northwestern University Traffic Institute is a table showing "Braking Distance." The first and last columns are in part as follows:

| "Speed of car | 44.3% braking |
|---|---|
| "10 m. p. h. | 7.5 feet |
| "20 " | 30.0 " |
| "30 " | 67.7 " |
| "40 " | 120.0 " |
| "50 " | 187.5 " " |

On this subject see also "Public Safety," Kreml-Stiver-Rice (Published 1937, The Bobbs-Merrill Co.)

We would not be understood as having taken judicial notice of the accuracy of any of the calculations on which the above mentioned stopping distances are based. In any case involving such questions the subject would seem to call for expert testimony for there are numerous variables which may affect the result in any particular case. Some of these are considered in detail in Mr. Baker's article. But we do point to this information as showing the fallacy of appellee's argument. If with the same braking and road conditions that permit a car traveling 20 miles per hour to be stopped in 30 feet it takes 187.5 feet to stop a car traveling 50 miles per hour, it can hardly be contended that failure to avoid hitting a car 90 feet away, even though the car hit be still skidding forward, was evidence of inadequacy of brakes.

Moreover, upon reexamination of the reasons assigned for the alleged error in giving the instruction we are impressed with the merit of Kahler's objections above quoted to the effect that not only was it inapplicable to the evidence but it was also prejudicially misleading. It seems to us that such an instruction should not be given even in a case where there is evidence of defective brakes and certainly not unless the braking distances, speed and other variables be shown by the evidence and appropriately treated in the instruction.

Appellee cites ten cases supposed to sustain the proposition "that the mere fact that the car driven by Kahler struck the car driven by Hoesel in the rear legitimately gives rise to an inference that Kahler's brakes were not in proper working order." We find nothing in any of these cases so holding. None of them involves the question before us as to whether an instruc-

tion as to defective brakes might be given based only upon an inference arising from the fact of a collision.

After examining carefully all of appellee's contentions on petition for rehearing we find no reason for receding from our original position but on the contrary additional reason for holding that it was error to give instruction number 10 requested by appellee.

Petition denied.

NOTE.—Reported in 53 N. E. (2d) 769.