## KOPLOVITZ *v.* JENSEN.

[No. 24,193. Filed April 2, 1926.]

1. AUTOMOBILES.—*Provision of automobile law requiring motor vehicles "operated or driven" upon a public highway at night held to apply to automobiles temporarily left standing in a highway, as well as to moving vehicles.*—The section of the automobile law requiring all motor vehicles, while "operated or driven" upon a public highway at night, to display a red light visible from the rear, was held to apply to automobiles temporarily left standing in a highway, or parked upon the traveled portion thereof, as well as to moving vehicles. p. 484.

2. APPEAL.—*Constitutionality of statute held sufficiently raised where an instruction based on the statute was objected to on ground of unconstitutionality of the statute and the giving of the instruction was assigned as a reason for new trial on that ground.*—Where an instruction based on a statute was objected to on the ground that the statute was unconstitutional and was assigned as one of the reasons for a new trial on that ground, the question of the constitutionality of the statute was sufficiently raised, though no objection was made to the evidence on that ground. p. 485.

3. CONSTITUTIONAL LAW.—*Every presumption will be indulged in favor of the validity of legislative action in determining constitutionality of a statute.*—It is an elementary rule that,

in determining the constitutionality of a statute, every presumption will be indulged in favor of the validity of legislative action. p. 486.

4. CONSTITUTIONAL LAW.—*Legislature may enact reasonable police regulation to promote the health, comfort, safety, and welfare of society.*—The legislature may enact reasonable police regulations to promote the health, comfort, safety and welfare of society, even though such enactments may invade the right of liberty or property of some individuals. p. 486.

5. CONSTITUTIONAL LAW.—*Necessity for legislation in nature of police regulations is entirely for the legislature, and the question whether it acted wisely in enactment of statute is no concern of courts.*—The necessity for legislation in the nature of police regulations is a matter entirely for the legislature, and the question of whether it acted wisely in the enactment of such a statute is no concern of the courts. p. 487.

6. CONSTITUTIONAL LAW.—*Action of legislature in selecting motor vehicles as a subject of legislation, and subjecting them as a class to certain regulations while being operated over the public highways, held not unconstitutional.*—The action of the legislature in selecting motor vehicles as a subject of legislation and in subjecting them as a class to certain regulations while being operated upon the highways of the state was a lawful and proper regulation of the use of property and, therefore, not in conflict with either the state or federal constitution. p. 488.

7. AUTOMOBILES.—*Section of automobile law requiring red light on rear of motor vehicle "operated" over a public highway in the nighttime, though construed as applying, to such vehicles while parked on a highway, held not arbitrary or unreasonable classification or special law so as to bring it into conflict with state or federal constitution.*—The section of the automobile law relating to lights on motor vehicles, and requiring that any such vehicle "operated" over a public highway at night must display a red light visible from the rear thereof, though construed as applicable to such vehicles while parked on a highway, is *held* not to be an arbitrary or unreasonable classification so as to bring it into conflict with Art. 1, §21 of the state Constitution or §1 of the Fourteenth Amendment to the federal Constitution, and not special within Art. 4, §§22, 23 of the state Constitution. p. 488.

8. AUTOMOBILES.—*Contributory negligence of driver of automobile in collision with truck standing in highway without tail light was properly submitted to jury.*—In an action for damages to an automobile by striking a truck standing in a highway at night without a tail light, the question of contributory

Koplovitz *v.* Jensen—197 Ind. 475.

negligence of the driver of the car, who dimmed his lights on meeting another car and turned his bright lights on immediately afterward, in compliance with the statute, was properly submitted to the jury. p. 488.

9. NEGLIGENCE.—*Plaintiff must prove his freedom from contributory negligence in action for negligent injury to property.*—In an action for damage to property resulting from the negligence of the defendant, the plaintiff must prove his freedom from contributory negligence. p. 490.

10. APPEAL.—*Appellate tribunal must accept jury's decision on question of contributory negligence, as it cannot weigh the evidence and determine correctness of verdict.*—An appellate tribunal must accept the decision of the jury on the question of contributory negligence, as it cannot weigh the evidence and determine the correctness of the verdict. p. 490.

11. TRIAL.—*Refusal of instructions fully covered by those given by the court on its own motion not error.*—There is no error in refusing instructions fully covered by those given by the court on its own motion. p. 490.

From the Lake Superior Court; *Maurice E. Crites,* Judge.

Action by Arthur R. Jensen against Ben Koplovitz. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Bomberger, Peters & Morthland,* for appellant.

*William J. Whinery* and *Henry B. Snyder,* for appellee.

MYERS, J.—Appellee brought this action against appellant to recover damages on account of injuries to his automobile resulting from a collision with appellant's truck alleged to have been caused by appellant's alleged failure and neglect to display a red light on the rear of his truck. A complaint in one paragraph answered by a general denial, formed the issues submitted to a jury which returned a verdict in favor of appellee for $750. Judgment on the verdict.

On appeal to this court appellant has assigned as error the overruling of his motion for a new trial wherein he asserts that the verdict is contrary to law and not

sustained by sufficient evidence; that the court erred in its instructions to the jury, and in refusing to give appellant's requested instructions.

Appellee's complaint, in substance, charges that while he was lawfully and carefully driving his automobile over and along a certain named public highway at about 11:45 p. m. of a certain day, and more than one-half hour after sunset and more than one-half hour before sunrise of the following day, appellant, the owner of an automobile truck, then and there operating it upon the same highway in the direction in which appellee was driving, did then and there negligently, carelessly and unlawfully fail to display on the rear of such truck a red light or any light whatsoever visible from the rear thereof, by reason whereof, and solely because of such careless, negligent and unlawful conduct of appellant, and without any fault or negligence on the part of appellee, the automobile collided with appellant's truck then and there by him permitted to stand on the highway mentioned, whereby the injury, of which complaint is made, resulted, and for which $1,000 is demanded.

The record at bar affirmatively shows that appellee relied, and the case was tried upon the theory that at the time of the alleged collision a statute of this state required that all motor vehicles operated or driven upon any public highway of this state must be equipped with a visible red light on the rear thereof, and that a violation of this provision constituted negligence.

While appellant in his brief refers to §13, Acts 1913 p. 779 as the section of the act relied on by appellee, yet we are inclined to believe from the record before us that §13 as amended by the legislature in 1919 was intended. Acts 1919 p. 700. While the latter enactment did not expressly repeal §13, it re-enacted it in *toto* with a proviso added, and hence the original section was repealed by implication. The amended section was therefore in

force when the accident and injury occurred for which appellee seeks redress.

Appellant first insists that the provision of the statute, that, "Every motor vehicle or motor bicycle operated or driven upon any public highway in this state * * * shall, during the period from one-half (½) hour after sunset to one-half (½) hour before sunrise, display at least two (2) lighted lamps on the front and one (1) on the rear of such motor vehicle, which shall display a red light visible from the rear," must be construed as a regulation of such vehicles only when the same are in motion. In support of this contention he refers us to the evidence which conclusively shows that the injury to appellee's automobile was the result of a collision with appellant's truck while it was at rest.

On this point, it may be well that we refer to the evidence, which, in substance, shows that appellant at the time of the alleged accident resided and was engaged in the fruit business at Gary, Indiana. He was the owner of a two-ton capacity stake body truck in which, with a driver, he left Gary at about ten o'clock at night, and while on the Ridge road between Gary and Highland he stopped the truck, alighted, walked across the road to a farm house about two or three rods away, and while there talking to some one, appellee, driving a Chalmers touring car at a speed of twenty miles an hour in the same direction that the truck was headed, collided with the left rear corner of the truck body, breaking the windshield, tearing off the top and a portion of the right-hand side of the body of the automobile, and otherwise damaging it. The truck, immediately preceding the accident, had been standing on the right hand portion of the traveled highway from five to ten minutes with no rear lights of any kind on it, and with the driver in the cab. After the accident the truck proceeded on its way.

Appellant cites *City of Harlan* v. *Kraschel* (1914), 164 Iowa 667, 146 N. W. 463, and *Musgrave* v. *Studebaker Bros. Co.* (1916), 48 Utah 410, 160 Pac. 117. The question involved in the City of Harlan case was the construction of a city ordinance substantially in the language of §18 of an Act of the thirty-fourth General Assembly of Iowa, requiring all motor vehicles operated or driven after dark to display two lighted lamps in front and one in the rear, the latter a red light visible from the rear.    The court, in considering the words "operated or driven" along with the context of §18, reached the conclusion that these words in the ordinance and statute (which statute was not materially different in its legal effect from ours) should be given a literal sense construction, and hence a standing car, although stopped temporarily, is not one being operated or driven within the strict terms and meaning of those words. The court also observed that public safety would be to some extent promoted by the requirement that all standing vehicles in public streets should display lights at night, but "there is no apparent reason for any distinction between one vehicle and another of equal capacity for obstruction."

The Iowa General Assembly at its thirty-eighth session (§§5044 and 5045 of the Code of 1924) amended the above enactment passed at its thirty-fourth session so as to provide that lights be displayed on "all motor vehicles 'in use' on the public highways."    The words "in use" were before the court in the case of *Griffin* v. *McNeil* (1924), 198 Iowa 1359, 201 N. W. 78, wherein damages were sought for an injury to an automobile resulting from a collision with another automobile parked on the side of a street with the lights, both front and rear, turned off.    It was held that the change in the statute from "operated or driven" to the words "in use" did not in any material sense alter the meaning of

the statute and therefore an automobile was not "in use" when standing by the curb of a public street where it had been left by the driver for a temporary purpose.

The Musgrave case was an action to recover damages for personal injuries. It appears that while defendant was engaged in moving two automobiles, tandem, connected with each other by a rope and likewise to a third which furnished the motive power for transferring them from the freight station to a garage, a half mile distant, the complainant, on foot, seeking to cross the street, knowingly stepped on the rope connecting the two dead cars and fell in front of the rear car, the front wheels of which passed over his limbs. There were no lights on the dead cars. The live car had lights, front and back, in compliance with the laws of Utah requiring that, "every motor vehicle while in use on a public highway shall be * * * so constructed as to exhibit * * * one hour after sunset and one hour before sunrise * * * white lights visible * * * in the direction toward which such vehicle is proceeding, and also a red light visible in the reverse direction." The court in that case held that the statute did not apply to the dead cars and that it applied only to cars actually being used on the public highways or streets, driven by their own power, and that the phrase "while in use on a public highway" does not include every motor vehicle on the highway regardless of the manner in which it is moved. We must assume that the court was speaking in reference to the particular facts of that case, and with that understanding, it expressed no opinion as to the effect of the phrase as applied to a car parked on the public highway or stopped for a temporary purpose.

The case of State v. Bixby (1917), 91 Vt. 287, 100 Atl. 42, was a prosecution for operating an automobile without lights. In that case it appears that on June 6,

1916, the defendant left his automobile standing next to the curb on a street in the city of Barre without lights for more than two hours after sunset, during which time the defendant was not near it and its machinery was dead. A statute of the State of Vermont, among other things, provides that "an automobile or motor vehicle operated" during the nighttime shall display at least two lighted lamps on the front and one on the rear of such automobile or motor vehicle, and a person who violates this provision is subject to a penalty. In the light of the facts of that case, the court held that the automobile was not being operated within the meaning of the statute, but suggested that very likely one that has incidentally stopped may be within the provision of the statute.

The question at present under consideration was before the Supreme Court of Massachusetts in *Commonwealth* v. *Henry* (1917), 229 Mass. 19, 118 N. E. 224, L. R. A. 1918B 827, and it was there said that: "The statute under which the complaint is drawn was enacted largely for the protection of travelers upon highways, by guarding against collisions with automobiles after dark when it would be difficult or impossible to know of their presence. The question is, whether a motor car which is left standing upon a highway after dark without lights and with the engine at rest can be found to be 'operated' within the meaning and intent of the statute. It is obvious that a motor car standing upon a highway under such conditions may be fully as great a menace to the safety of travelers as if running upon the way without lights, and that the danger of serious injury to travelers by coming in contact with such a car would be very great. The word 'operated' is not, as the defendant contends, limited to a state of motion produced by the mechanism of the car, but includes at least ordinary stops upon the highway, and such stops

are to be regarded as fairly incidental to its operation." The court then quoted with apparent approval from *Stroud* v. *Water Commissioner* (1916), 90 Conn. 412, 97 Atl. 336. That was a case where the plaintiff's automobile was parked in a highway, commonly used for parking automobiles, with all power shut off, brakes set and no one in charge. While thus at rest, the defendant's servants negligently drove a large motor truck into it whereby it was injured. One of the questions presented was whether the injury complained of was "received by reason of the operation of said motor vehicle in or upon the public highways of this state." At that time there was a statute in force which required that, "every motor vehicle shall, at all times while in use or operation upon the public highways of this State, have displayed in a conspicuous place, at the front and rear, the register number plates or markers furnished by the secretary." The court said: "The word 'operation' cannot be limited, as the plaintiff claims it should be, to a state of motion controlled by the mechanism of the car. It is self-evident that an injury may be received after the operator has brought his car to a stop, and may yet be received by reason of its operation. The word 'operation,' therefore, must include such stops as motor-vehicles ordinarily make in the course of their operation. * * *. In this case the plaintiff's car was as much in the ordinary course of operation on the highway at the time of the injury as if it had been used for shopping, calling, or delivering merchandise."

The two Iowa cases to which we have referred sustain appellant's contention that the light provision of our statute applies only to moving motor vehicles. We fully recognize the high standing of that court's decisions, but we are not convinced that the words "operated or driven" should be so strictly and narrowly construed.

Without reference to cars from other states we know

from official statistics that 721,000 resident-owned motor-driven vehicles were operated on our roads last year. Six hundred and twenty-seven thousand of these were pleasure cars and the remainder, 94,000, were trucks. We must assume that the legislature was cognizant of this means of travel and the handling of freight, and was advised of the necessity for a law regulating such vehicles while on the public highways of this state. To meet this emergency we have our present motor vehicle law. It provides, among other things, as we have seen, that these vehicles be equipped with lights visible at night, not only on the front but on the rear. This provision is clearly for the purpose of protecting travelers and property upon highways against after-dark collisions with such vehicles. Looking to the legislative purpose to be accomplished by the provision of the law under consideration, we are satisfied that the words "operated or driven" should not be limited to their strict etymology, but that they should be interpreted according to the sense in which they are employed, and by so doing, the operation of the statute will be effectuated to meet the manifest intention of the legislature. We, therefore, conclude that motor vehicles at rest temporarily, or parked upon the traveled portion of a public highway in this state, as well as those in motion, are within the "light" provision of the act. *Jaquith* v. *Worden* (1913), 73 Wash. 349, 132 Pac. 33, 48 L. R. A. (N. S.) 827; *Commonwealth* v. *Henry, supra;* Babbitt, Law of Motor Vehicles (3d ed.) p. 368, §563.

Appellant next insists that to construe the words "operated or driven" as we have done would be to sanction an arbitrary and unreasonable legislative classification and regulation, clearly inhibited by Art. 4, §§22 and 23 and Art. 1, §23 of the Constitution of Indiana, and

forbidden by §1 of the Fourteenth Amendment to the Federal Constitution.

No demurrer was filed to the complaint, nor did appellant object to the introduction of any evidence upon the ground that the statute was unconstitutional.

2.  However, appellant, as causes in support of his motion for a new trial, specified instruction No. 15 tendered by him and by the court refused, to the effect that the law does not require a red light to be displayed upon a motor vehicle at rest upon a public highway. He also specified instruction No. 10 given by the court upon its own motion, to the effect that the failure to display a red light visible from the rear of a motor vehicle, when operated or driven upon a public highway in this state during the period from one-half hour after sunset to one-half hour before sunrise, was *per se* negligence. Upon the foregoing instructions, appellant makes the point that the court erred in both instances because the statute requiring a motor vehicle to display a red light on the rear thereof during the time mentioned is an unreasonable and arbitrary classification, and therefore unconstitutional and void.

These instructions were based upon the same provision of the statute. The reserving of exceptions to each of them raised the question as to which, if either, stated the law correctly, and by making them causes for a new trial and challenging the one given on the ground that it was based upon an unconstitutional statute was sufficient to raise the question of constitutionality.

In view of the evidence and the finding of the jury, as disclosed by its verdict, we are limited on this phase of the case to a consideration of the authority of the legislature to enact the red light provision of the statute as applied to motor vehicles at rest, for, from the settled facts, at the time of the collision, the truck,

headed west, had stopped for a temporary or brief period of time on the north side of the traveled portion of the highway with no red light displayed on the rear thereof, and its driver in a position to proceed.

Appellant, as we understand him, concedes that the legislature, by the act in question, has made a reasonable classification and reasonable regulations in the exercise of its police power covering the use and operation of moving motor vehicles upon the public highways and thoroughfares of this state. But, to classify motor vehicles at rest on the public highway and subject them to regulations not demanded of other standing vehicles used by the public as a means of travel upon such highways is an arbitrary exercise of power and discrimination not alone based upon the welfare and safety of the public, which is the controlling principle for the exercise of police power. In support of this contention, it is insisted that an automobile truck standing on the side of the road is no more dangerous to public travel than an ordinary farm wagon occupying the same position.

It is an elementary rule that every presumption will be indulged in favor of the validity of legislative action. The power of the legislature of this state to pass 3, 4. and promulgate reasonable police regulations has never been denied. It may exercise the police power when necessary and appropriate to promote the health, comfort, safety and welfare of society, even though such enactments may invade the right of liberty or property of an individual. *Bailey* v. *People* (1901), 190 Ill. 28, 60 N. E. 98, 83 Am. St. 116, 54 L. R. A. 838. The act here in question was designed to secure the safety of travelers upon the public highway. It is public in purpose and applies alike to all persons similarly situated, and is of general application to all members of the same class. The incorporation of these

elements into a law resting upon public policy is not subject to the claim of class legislation, that is to say, discrimination against some and favoring others, and is sufficient denial of the claim that it is founded upon an unreasonable basis.

In *Minneapolis, etc., R. Co.* v. *Beckwith* (1888), 129 U. S. 26, 9 Sup. Ct. 207, 32 L. Ed. 585, in speaking of §1 of the Fourteenth Amendment, it was said: "The discriminations, which are open to objection, * * * are those where persons engaged in the same business are subjected to different restrictions, or are held entitled to different privileges under the same conditions. It is only then that the discrimination can be said to impair that equal right which all can claim in the enforcement of the law." See, also, *Barbier* v. *Connolly* (1884), 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 823; Cooley, Constitutional Limitations (6th ed.) pp. 479, 481.

If it were within the province of courts to determine the wisdom, policy, or expediency of legislation, then the farm wagon suggestion of appellant would 5. be quite persuasive of his views. But, inasmuch as the necessity for such legislation is a matter entirely for the legislature, the question of whether or not it acted wisely in adopting a classification is a matter of no concern to the courts unless it appears that such classification is not founded on substantial distinctions with reference to the subject-matter, or is so manifestly unjust and unreasonable as to destroy the lawful use of property. *Bedford Quarries Co.* v. *Bough* (1907), 168 Ind. 671, 80 N. E. 529, 14 L. R. A. (N. S.) 418; *State* v. *Wiggam* (1918), 187 Ind. 159, 118 N. E. 684; *City of Des Moines* v. *Keller* (1902), 116 Iowa 648, 88 N. W. 827, 93 Am. St. 268, 57 L. R. A. 243; *State* v. *Yopp* (1886), 97 N. C. 477, 2 S. E. 458, 2 Am. St. 305; Bierly, Police Power, pp. 68, 70.

We therefore conclude that the action of the legisla-

ture, in selecting motor vehicles and in subjecting them as a class to certain regulations while being oper-

6, 7. ated or driven upon the public highways of this state, was obviously lawful and a proper regulation of the use of property (Black, Constitutional Law [3d ed.] p. 433), and consequently not forbidden by the due process of law, equal protection of laws, or the privilege or immunity clauses of Art. 14, §1 of the Federal Constitution; nor was the legislature inhibited by the equal privilege and immunity section of our Bill of Rights. Art. 1, §23, state Constitution. Nor is the act in question local or special as applied to punishment of crimes, but it is of uniform operation throughout the state upon the subject-matter therein, and applicable alike to all persons within the class, and hence not inhibited by Art. 4, §§22 and 23 of the Constitution of Indiana.

For the reasons stated, the ruling of the court on each of the instructions above considered is sustained.

Appellant also insists that appellee was guilty of contributory negligence in not having his car under such control as would enable him to stop within the

8. range of his vision. The evidence, in addition to that already stated, shows that appellee was driving at a speed of not over twenty miles an hour; that while thus driving he saw a machine about 300 yards away coming toward him and he dimmed his lights, as did the approaching machine. As they passed each other appellee turned on his bright lights and immediately saw the truck some fifteen or twenty feet ahead. He turned his car to the left, but not enough to prevent the right side from colliding with the platform of the truck, which was occupying one-half or more of the traveled road. The platform of the truck projected sidewise over the rear wheels three or four feet and was about four feet above the ground. The

collision caused appellee to lose control of his car, and it finally went into the ditch in front of the truck. Where the accident . happened, the road was smooth and straight, and fifteen to eighteen feet wide, room for two machines to pass. With bright lights on, appellee could see objects three hundred feet and with dimmers from twenty-five to forty feet ahead. He had driven a car for four years. He had never made a test to know within what distance he could bring his car to a stop from a speed of twenty miles an hour, but thought he could do so in fifteen or twenty feet.

The statute, as we have seen, required one light on the rear of the truck "which shall display a red light from the rear," the rear lamp to be so adjusted as to shine upon the rear number plate in a manner to render "the numerals thereon visible for at least one hundred (100) feet."

According to the evidence, appellee was not at fault in dimming the lights on his car (§10476i Burns' Supp. 1921), nor can it be said that he was negligent in not more promptly turning them on. It is apparent from the evidence that appellee's first knowledge of the truck was when he turned on his bright lights. It was then that he learned of his perilous situation and the imminent danger of great bodily harm. The truck body, of which the floor was three inches thick, extended back of the wheels four or five feet and four feet above the ground, thus permitting the front of his car to pass under it. He faced an emergency for momentary action. He had a choice of two methods of escape; one to stop and the other to pass around the truck. Had he chosen to stop and failed in the attempt, serious personal injury obviously would have resulted. But he sought to escape the impending collision by veering his car around the truck, with the result that the body of his car near the front door struck the corner

of the side and rear extended truck bed, causing the damage for which he recovered judgment.

Appellant is correct in saying that in an action for the recovery of damages for injury to property the plaintiff must prove his freedom from contribu-
9. tory negligence. He then insists that appellee was guilty of such negligence as a matter of law because he was driving at a rate of speed that would prevent him from stopping within the range of his vision. In support of this contention he cites *West Construction Co.* v. *White* (1914), 130 Tenn. 520, 172 S. W. 301; *Lauson* v. *Fond du Lac* (1909), 141 Wis. 57, 123 N. W. 629, 25 L. R. A. (N. S.) 40, 135 Am. St. 30, and other cases.

If the evidence in the instant case was such that the court could say, as a matter of law, that appellee was or was not guilty of contributory negli-
10. gence, then appellant's argument and the cases he cites on such point would be quite influential. But the circumstances, surrounding conditions and appellee's action immediately before and at the time of the accident were all before the jury on the question of whether or not appellee contributed to his injury, and its conclusion thereon, approved by the trial court, cannot be disturbed by this court without weighing the evidence, and that we cannot do.

Some of appellant's tendered instructions which were refused were to the effect that if appellee was traveling at such a speed that he could not stop within the
11. range of his vision and thus avoid objects in front of him, he was not using reasonable care and could not recover. The subject of these instructions was fully covered by instructions given by the court on its own motion.

Appellant also complains of several of the instructions given by the court of its own motion. We have

carefully considered all of the instructions given and have reached the conclusion that when so considered the law of the case was fully and fairly presented to the jury, and that it will serve no good purpose to take the space and time to point out wherein appellant's criticism of each particular instruction is not well taken. We are convinced the case was fairly tried and that no error intervened for which the judgment should be reversed.

Judgment affirmed.