HIATT *v.* TRUCKING, INCORPORATED ET AL.

[No. 18,231. Filed February 28, 1952. Rehearing denied
March 19, 1952. Transfer denied May 13, 1952.]

412

*Robert L. Smith* and *John A. Resler*, both of Port-land; *John D. Wilson*, of Winchester; *E. Earl Robins*, of Centerville; and *Keith Fraser* (of counsel), of Portland, for appellant.

*Harlan, Brubaker, Harlan & Schussler*, and *Livengood & Livengood*, both of Richmond; *Brown & Edwards*, of New Castle; *Bowen, Mendenhall & Hunter*, of Winchester; and *Harlan, Brubaker, Harlan & Schussler* (of counsel), of Richmond for appellees.

MARTIN, J.—Appellant brought this action to recover damages for alleged property damage resulting from a collision between a car owned and operated by appellant and a truck owned by Trucking, Incorporated, and Ralph Winters, which truck was being operated

by appellee, Charles Rey Hull. The truck driver filed his counter-claim against appellant, alleging damages for personal injuries.

The complaint and counter-claim were put at issue by answers. There was a trial by a jury which resulted in a verdict of $6,000 for personal injuries on appellee Hull's counter-claim. From a judgment on this verdict an appeal was taken.

Appellee's counter-claim alleges in part as follows:

"1. That on May 18, 1944, at about 9:30 o'clock, p. m., this defendant was engaged in the operation of a White tractor-trailer motor truck, going in a westerly direction along and upon U. S. Highway No. 40, a public highway in said county and state, approaching a point in said highway where the same is intersected by Third Street in the town of Centerville, said county and state; that at said time the plaintiff was upon said highway driving and operating his 1937 Ford Tudor Sedan automobile going west and in front of the motor truck so driven by this defendant; that the motor vehicles so driven by the respective parties were being driven at approximately fifteen to eighteen miles per hour; that immediately before the plaintiff reached said intersection, without warning or signal of any kind, he drove his said automobile to the left so that the left wheels were across and south of the middle dividing line of said street at a point and in which position the plaintiff, without warning or signal of any kind, suddenly, negligently, carelessly, unlawfully, abruptly and sharply turned his automobile to the right and in front of and into the path of the said tractor-trailer then being driven by this defendant; the plaintiff then intended to go north on said Third Street from said intersection, although from his manner of driving his automobile it appeared to this defendant, and would appear to any prudent person, that the plaintiff was about to turn south in said intersection and to his left. That the instant this defendant observed plaintiff turning his automobile into the path of defendant's truck this

defendant turned to the right in an effort to avoid a collision; that plaintiff then and there ran his automobile into said tractor-trailer of defendant, causing defendant to lose control thereof, which tractor-trailer ran up, against and over the curbing at the northwest corner of said intersection striking and breaking off a utility pole there located and causing said tractor-trailer to continue and strike a large tree approximately six feet to the west of said utility pole, all of said acts of collision being continuous in character and all due to the carelessness and negligence of plaintiff as aforesaid.

"2. That as a result of the aforementioned collision between plaintiff's said automobile and said tractor-trailer driven by this defendant said tractor-trailer unit was entirely and completely demolished and the cab portion of said tractor-trailer wrecked in such a manner that this defendant was helplessly pinned in and under said wreckage for a period of approximately forty-five minutes before he could be extricated therefrom.

"3. That as a result of said collision and resulting acts of collision this defendant then and there suffered painful, severe and permanent bodily injuries in that defendant suffered a deep laceration to the arch of his right foot, fractured left femur, severe abdominal blows, and many cuts and bruises of his body."

The assignment of error questions the court's ruling in overruling appellant's motion for a new trial. The grounds in said motion were: The verdict of the jury is contrary to law; the verdict of the jury is not sustained by sufficient evidence, and, the court erred in admitting evidence over the objection of the plaintiff, in that the witness Lewis Bond, a witness produced by the defendant, Hull, upon the direct examination of the said Lewis Bond, and after he had testified that he was the first person to arrive at the scene of the collision, that other people came up almost instantly; that he learned that the defendant, Hull, was in the

cab of the truck. The witness, Bond, was then asked by the counsel for the defendants—"What did he (Hull) say?" to which question counsel for the plaintiff objected as follows, "I object; it is hearsay evidence and no part of the res gestae," which objection was overruled by the court, and the said Lewis Bond answered as follows, "He wanted to let his wife and children know and as also he said 'Why did that man turn in front of me.' " Thereupon counsel for the plaintiff moved to strike out the answer, which was also overruled by the court.

On appeal, when the sufficiency of the evidence is questioned, we do not weigh the evidence, but we examine the record to see if there is any evidence, or any reasonable or logical inference which may be drawn from the evidence, which if believed by the jury would sustain the verdict. *Kempf* v. *Himsel* (1951), 121 Ind. App. 488, 98 N. E. 2d 200; *Gamble* v. *Lewis* (1949), 227 Ind. 455, 85 N. E. 2d 629.

Hull testified in substance as follows:

Stopped just outside Centerville, relieved myself, checked the tires and lights, and got back in the truck. This was around 9 o'clock and the weather was good; just as I started off a blue sedan passed me and as I proceeded along the highway the car was about 80 to 85 feet ahead of me traveling about 25, maybe 35, miles an hour. Just in Centerville I noticed that car got out to the white line, slowed up and that closed the distance between us, then he came to the middle of the road again, that is on our half, and then he went back out again, and I thought—well, maybe, he is going to stay out there and I got out next to the outer edge, as close as I possibly could and he came back again; that was after we came up to Fourth Street. I wasn't too far behind him at Fourth Street and at that time this car was going 15 to 20, maybe 22 miles. When he was in the middle of the block between Fourth and Third Streets he pulled out to

the middle, or next to the white line again and slowed up more, and I naturally thought he was going you know to make a left-hand turn, that is the proper way to go, is to the middle of the road, the road was clear, there were no cars parked next to the curb, so I was going around on the right side. When he pulled to the center of U. S. 40 he stayed there for some distance and I saw something that looked like a small child standing up between us. I was seated about two and one-half feet higher than the driver of that car. I had eight lights on. This car stayed in the center of the highway until he reached Third Street then I started around him. He gave no warning but pulled his car up to the front end part of the tractor; I put on the brakes, knew he would hit me; I hollered and put on the brakes as hard as I could, was up next to the curb when the impact came. When Hiatt started to turn I flashed my lights and threw on my brakes, held onto my truck, turned to the right, hit the curb and lost control and hit the tree. Couldn't get my legs on the seat in time, they were caught. Truck outfit that night weighed about 35,000 pounds. At 30 to 35 miles an hour it takes that kind of truck a length and a half to stop. Brakes were working and as I started around Hiatt I was going about 15 to 20 miles an hour at the most. Didn't see Hiatt signal. I was in a lot of pain, then the pressure broke my left leg 2, 3 inches from hip. My back was injured. In cab 25 minutes and then taken to hospital. Received medical treatment, had pin in leg, now have scars.

CROSS-EXAMINATION—I was behind Mr. Hiatt 80 to 85 feet as I started into the edge of Centerville; I started to pass the first time he went to the middle. I was behind him 50 to 60 feet just as we passed Fourth Street. He was close to the center line and I was to his right about 3 feet from the curb. It was about 18 to 20 feet east of Third Street when I knew that there would be a collision. I applied my brakes at this distance. The truck was about 34 feet long. Going 18 to 23 miles as I approached Third Street. At this speed would require 50 to 75 feet in which to stop. Lost control

on the east side of Third Street. I couldn't go to left so I pulled to the right and that was when he went into me. . . . When I reached a point about 20 feet east of the east curb line of Third Street in Centerville, the left front fender of my truck was about 2 feet to the right of the rear fender of Mr. Hiatt's car. My truck is eight feet wide. The Hiatt car was about 10 feet from the right or north curb. When I started around him I was about 3 or 4 feet to his right.

Lewis Bond, a witness called by the defendant, testified in substance as follows:

I live at 416 East Wall Street, Centerville, Indiana, but on May 18, 1944, I lived at 400 East Main Street, Centerville, with Mr. and Mrs. George Brown and my wife. I am 44, my occupation is Assistant Personnel Director at the Wayne Works, Richmond, Indiana. On May 18, 1944, I resided at the northeast corner of the intersection of Third and Main Streets in Centerville, in the house referred to as the Brown House. On May 18, 1944, at about 9:30 P. M., I remember that I was sitting in the northwest corner of the living room with Mr. Brown and we heard a screeching noise, either brakes or tires. I immediately rushed out of the house, discovered an accident and went to the scene to the driver's side of the cab of the truck. Charles Rey Hull, the defendant, was in the cab trapped by the trailer and I couldn't give him any relief. When I arrived the cab was across Third Street jammed up against a tree with its front bumper. Mr. Hull was suffering terribly and screaming; he wanted his wife and children to know, and said, "Why did that man turn in front of me?" The man was jammed in there 45 minutes and I paid strict attention to giving him relief and saw no one. It required about a minute or two to get from the living room of the Brown House to the scene of the accident and I stayed at the scene until Mr. Hull was taken to the hospital. I didn't see Mr. Hiatt at the scene but we unloaded the trailer and relieved the pressure on Mr. Hull by means of crow bars. I never knew the defendant, Mr. Hull, but I did know the plaintiff, Mr. Hiatt.

CROSS-EXAMINATION—The trailer was not a van type; it was what we would call a flat bed type with sideboards and as I remember was loaded with war materials—large springs—but the trailer didn't go over the cab. The trailer did push the cab forward and the bumper and engine were both pushed back. The flat bed was broken loose from the trailer chassis, that is the bolt, and when that broke that let the bed go up into the cab and the tractor was a complete wreck.

Burns' 1940 Replacement, §47-2013, provides as follows:

"(a)   The driver of a vehicle may overtake and pass upon the right of another vehicle which is making or is about to make a left turn.

"(b)   The driver of a vehicle may overtake and, allowing a sufficient clearance, pass another vehicle proceeding in the same direction either upon the left or upon the right on a roadway with unobstructed pavement of sufficient width for four (4) or more lines of moving traffic when such movement can be made with safety. No person shall drive off the pavement or upon the shoulders of the roadway in overtaking or passing on the right."

Burns' 1940 Replacement (1951 Supp.), §47-2020, provides in part as follows:

"Required position and method of turning at intersections. The driver of a vehicle intending to turn at an intersection shall do so as follows:

"(a)   Both the approach for a right turn and a right turn shall be made as close as practical to the right-hand curb or edge of the roadway.

"(b)   Approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and after entering the intersection, the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered."

Appellant contends that appellee, Hull, violated a statutory duty in attempting to pass the vehicle of Hiatt on the right. There is evidence in the record that Hiatt pulled to the center of the street, next to the white line, until he got close to the intersection, slowing up as he approached the intersection, then suddenly turned to the right without giving any signal. There were no cars parked along the right curb. The statute permits passing on the right when another vehicle is about to make a left turn. Here all appearances were that Hiatt was preparing to make a left turn since he was driving in the middle of the street next to the center line, the position from which a left turn is required to be made. Hull's attempt to pass on the right, when the appearance was that Hiatt was about to make a left turn, was not the cause of the collision. The last act was Hiatt's suddenly turning to the right without warning. If Hiatt had not turned from the center of the street there would have been no collision and resultant injuries.

Instruction number 6 instructed the jury that Hull had the same right to rely on appearances that any reasonable prudent person would employ, under the same or similar circumstances, and if Hiatt's approach to the intersection reasonably indicated a left-hand turn was intended then Hull was not negligent in passing on the right.

The jury, by its verdict, found in effect that appellant's negligence was the proximate cause of the injuries, and that appellee's negligence, if any, did not contribute thereto. It is our opinion that the facts disclosed are such that different conclusions might be drawn by prudent persons as to the cause of the injuries, and hence the question of proximate cause was for the jury to determine. *Vogel* v. *Ridens* (1942), 112 Ind. App. 493, 44 N. E. 2d 238;

*Continental Casualty Co.* v. *Lloyd* (1905), 165 Ind. 52, 73 N. E. 824; *Vandalia R. Co.* v. *Kendall* (1918), 68 Ind. App. 1, 119 N. E. 816. The jury having decided that issue against appellant, its conclusion cannot be disturbed. *Koplovitz* v. *Jensen* (1926), 197 Ind. 475, 151 N. E. 390.

The appellant contends that the evidence given by the witness, Lewis Bond, concerning the explanation of appellee, Hull, was hearsay and no part of the res gestae. Mr. Bond testified that "it required about a minute or two to get from the living room of the Brown house to the scene of the accident, . . . When I arrived the cab was across Third Street jammed up against a tree with its front bumper. Mr. Hull was suffering terribly and screaming; . . ." Mr. Bond was asked the following question by counsel: "What did he (Hull) say?" to which question counsel for the plaintiff objected as follows: "I object; it is hearsay evidence and no part of the res gestae," which objection was overruled by the court, and the witness answered, "He wanted to let his wife and children know and as also he said 'Why did that man turn in front of me.'" Thereupon counsel for the plaintiff moved to strike out the answer, which motion was overruled by the court. We find no error in these rulings. Under the circumstances we think the statement of the appellee was part of the res gestae. It was contemporaneous with the collision or so near in point of time that it must be regarded as part of the principal fact and so immediately and closely connected with it as to be practicably inseparable; and it is helpful to a clear understanding of the matter in issue. *McClure* v. *Miller* (1951), 229 Ind. 422, 98 N. E. 2d 498; *Gary Railways* v. *Cline, et al.* (1951), 121 Ind. App. 449, 94 N. E. 2d 759, 97 N. E. 2d 628; *Louisville, New Albany and Chicago Railway Co.* v. *Buck, Adm'r.*

(1888), 116 Ind. 566, 577, 19 N. E. 453; *Louisville, Evansville and St. Louis Railroad Company* v. *Berry* (1891), 2 Ind. App. 427, 28 N. E. 714; *Doe, on the Demise of Sutton* v. *Reagan, et al.* (1839), 5 Blackf. 217, 218; *M. O'Connor & Co.* v. *Gillaspy* (1908), 170 Ind. 428, 434, 83 N. E. 738; *Fort Wayne, etc., Traction Co.* v. *Roudebush* (1909), 173 Ind. 57, 62, 64, 88 N. E. 676, 89 N. E. 369. There was no abuse of discretion in admitting this statement in evidence. *Kelley* v. *Dickerson* (1938), 213 Ind. 624, 638, 639, 13 N. E. 2d 535; *Western & Southern Life Ins. Co.* v. *Lottes* (1946), 116 Ind. App. 559, 574, 63 N. E. 2d 146, 64 N. E. 2d 405, 64 N. E. 2d 805.

The decision is sustained by sufficient evidence and is not contrary to law.

Finding no reversible error, the judgment is affirmed.

NOTE.—Reported in 103 N. E. 2d 915.