# BYBEE *v.* BROOKS

[No. 18,312. Filed June 23, 1952. Rehearing denied
November 19, 1952.]

*Clark & Plummer,* of Bedford, and *Montgomery & Montgomery,* of Seymour, for appellants.

*Thomas H. Branaman* and *Bruce Markel, Jr.,* of Brownstown, for appellee.

MARTIN, J.—This is an appeal from a judgment in an action for damages for alleged personal injuries, brought by the appellee who sustained such injuries while riding as a guest in a motor vehicle operated by the appellant.

The issues were formed on appellee's second amended complaint in one paragraph and appellant's answer in one paragraph in which he admitted that appellee was riding as a guest in such automobile driven by appellant. Appellant denied other allegations of the complaint.

The cause was submitted to a jury which returned a verdict in favor of the appellee and against the appellant in the sum of $5,000 and judgment was rendered thereon.

The error assigned for reversal in this court is that the court erred in overruling appellant's motion for a new trial.

The grounds assigned in said motion for a new trial are: The verdict of the jury is not sustained by sufficient evidence; the verdict of the jury is contrary to law; . . . because of errors of law occurring at the trial and excepted to by the defendant in each of the following instances, to-wit: (a) . . ., (b) the court erred in refusing to give to the jury each of the instructions tendered by the defendant and numbered severally 7

and 10, to which rulings of the court the defendant at the time objected and excepted.

The evidence favorable to appellee shows that on the afternoon of September 4, 1949, the appellant drove his automobile, with appellee and Jean Coffman, daughter of appellee, Oren Coffman, husband of Jean Coffman, also Carolyn Brooks, the seven year old granddaughter of appellee, as his invited guests, over Highway No. 135 in a northwesterly direction from Brownstown toward Freetown and over a long winding hill approximately one-half mile in length and known as Jackson hill.. As they approached the foot of this hill the rain which had begun while they were some distance back increased in intensity, accompanied by wind, to such extent tht it was extremely difficult to see the roadway, and appellant's car traveled from one side of the highway to the other, at one time narrowly missing the concrete abutment to a culvert at the foot of said hill before they started to ascend. One occupant of the car requested that appellant stop until the rain abated before reaching this hill. Appellant continued to drive his car 35 to 40 miles per hour and started up the hill. The road and hill was familiar to other occupants of the car but wholly unfamiliar to appellant. Jackson hill is approximately one-half mile in length and steep, with a level length of road on top of 50 to 75 yards and a decline of approximately one-fourth mile. After appellant started up the hill the rain and wind became so intense that vision of the road and surrounding terrain was totally obscured. At this point Mrs. Coffman, sitting in the rear seat behind appellant, asked him to stop. He ignored her request. Mr. Coffman then sternly said, "Bybee, why in the hell don't you stop?" The appellant paid no heed. The child then stood up between the occupants in the back

seat and, with her mouth not over a foot from appellant, started pleading and screaming, "Grandma, make him stop. Mr. Bybee, stop, you are going to wreck us. You are going to kill us all. I bet if my daddy was here you would stop," and the child continued screaming until the car came to rest in the creek at the foot of the hill. To these entreaties the appellant paid no heed. After they reached the top of the hill the appellee, who was sitting beside the driver, said to him, "Why in the devil don't you stop?" and the appellant answered, "I believe I will," but did not stop, did not slacken speed, did not attempt to pull off the road, did nothing for the safety of his guests, but continued on down the farther side of the hill with increased speed, the child still screaming in terror all the way. At the foot of the hill is a one-way concrete culvert over a creek with a perpendicular concrete and rock wing on the right side next to the hill as one travels north, the creekbed being seven feet nine inches below the surface of the roadway over this abutment and over the culvert. There is also a line of guard posts seven inches in diameter, standing three feet above the ground and set four feet in the ground, extending from the south end of the culvert and toward the hill and about three feet from the blacktop surface of the highway. The appellant drove his car into these guard posts, breaking one off completely and knocking two posts out of the ground and knocking the fourth post to one side, and continued over the embankment into the creek and against the concrete wing on the opposite side of the creek. The water in the stream was up to the seat of the car. As a result, the appellee was seriously and permanently injured, suffering a crushed kneecap, a broken arm, several broken ribs, and multiple bruises and contusions.

On cross-examination the defendant testified in substance as follows: 'I can't say I remember whether it was raining as we went up the hill that day. That has been two years ago. I wasn't interested in the rain. When I left the top of the hill and started down the hill I couldn't see very far ahead, I would be afraid to say, I could just tell it was daylight. I kept on driving with the road and rain in that condition with my foot off the accelerator and was coasting, but did not have my foot on the brake. I couldn't tell just how far over the flat top of that hill I was when I lost vision of the road—no, I couldn't. I did continue to drive and at that time was conscious of the fact the car was moving and that Mrs. Brooks and the other occupants were in the automobile and I didn't know at that time where my car might go. I never tried to stop the car by brake. I didn't put on the brake and I didn't try to stop the car. I don't know whether there was any rain ahead of me, I couldn't see it—how do I know.'

Burns' 1952 Replacement, §47-1021, reads as follows:

> "The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, while being transported without payment therefor, in or upon such motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wanton or wilful misconduct of such operator, owner, or person responsible for the operation of such motor vehicle."

It is contended by the appellant, in view of the above statute, that in order to sustain a verdict for appellee it was necessary that the evidence show that appellee's injuries were the proximate result of the wanton or willful misconduct of appellant

in the operation of his automobile. It is appellant's contention that there is no evidence to support the charge of wanton or willful misconduct against appellant.

In the case of *Becker* v. *Strater* (1947), 117 Ind. App. 504, 72 N. E. 2d 580, the court said:

> "Willful or wanton misconduct consists of the conscious and intentional doing of a wrongful act or omission of a duty, with reckless indifference to consequences, under circumstances which show that the doer has knowledge of existing conditions and that injury will probably result. *Bedwell* v. *Debolt* (1943), 221 Ind. 600, 50 N. E. 2d 875; *Hoesel* v. *Cain* (1943), 222 Ind. 330, 53 N. E. 2d 165; *Swinney* v. *Roler* (1943), 113 Ind. App. 367, 47 N. E. 2d 486; *Lee Brothers* v. *Jones* (1944), 114 Ind. App. 688, 54 N. E. 2d 108."

We are of the opinion there is abundant evidence from which the jury could and did resolve the issues of fact in favor of the appellee and this court will not weigh the evidence but will consider only the evidence most favorable in support of the triers of the facts. *Hiatt* v. *Trucking, Inc., et al.* (1952), 122 Ind. App. 411, 103 N. E. 2d 915; *Ayres* v. *Smith* (1949) 227 Ind. 82, 84 N. E. 2d 185; *Pearson Co.* v. *Cohen* (1949), 118 Ind. App. 699, 83 N. E. 2d 433; *Haynes* v. *Brown* (1950), 120 Ind. App. 184, 88 N. E. 2d 795.

The appellant also contends that the court erred in refusing to give appellant's instruction numbered 7, which reads as follows:

> "In view of the Indiana statute, known as the 'Guest Statute,' which has been heretofore read to you, mere negligence on the part of the defendant in the operation of his automobile, if you should find that the defendant was guilty of negligence in

this respect, would not justify a verdict in favor of the plaintiff in this case, even though you should further find that such negligence was the proximate cause of plaintiff's injuries, and you should not return a verdict for the plaintiff in this cause unless you find from a preponderance of the evidence that her injuries were proximately caused by the wanton or wilful misconduct of the defendant."

Having in mind our decisions in the cases of *Kettner* v. *Jay* (1940), 107 Ind. App. 643, 26 N. E. 2d 546, and *Pierce* v. *Clemens* (1943), 113 Ind. App. 65, 46 N. E. 2d 836, we are of the opinion that instruction number 7 would have been proper and no serious objection could be raised had it been given. The refusal of the court to give it, however, is not reversible error because the issue submitted to the jury was one of wanton and willful misconduct and the jury was instructed fully as to what constitutes wanton or willful misconduct and were told that in order to recover the appellee must prove the same by a fair preponderance of the evidence.

Appellant also contends that the court erred in refusing to give appellant's instruction number 10, which reads as follows:

"If you find from the evidence in this case that shortly before the accident described in plaintiff's complaint the defendant, in driving the automobile in which plaintiff was riding, was confronted with a sudden emergency which occurred without any fault on his part, and that in the face of such emergency he operated said automobile in the manner which, in his judgment, was least likely to cause injury to himself and the persons riding with him in said automobile, then and in that event you are instructed that the defendant was not guilty of wanton or wilful misconduct and your verdict should be for the defendant."

This court, in a case of somewhat similar facts, *Loehr* v. *Meuser* (1950), 120 Ind. App. 630, 93 N. E. 2d 363, said:

"The appellant seems to feel that because he did everything in his power to avert the accident after he discovered its imminence, his conduct cannot be characterized as willful or wanton. That, however, is not the test. The question should be determined by a consideration of his whole course of conduct leading up to the accident and the inquiry will not be confined to occurrences at the immediate time and place thereof. *Pierce* v. *Clemens* (1943), 113 Ind. App 65, 46 N. E. 2d 836."

This instruction is erroneous and misleading in that it would confine a factual situation to the moment of the catastrophe and then upon a finding of certain facts at the moment peremptorily direct a verdict for the defendant. The whole course of conduct is involved in determining wanton or willful misconduct.

This instruction was mandatory and lacked any reference to defendant's whole course of conduct leading up to the accident, as shown by the evidence, regardless of the fact that his own willful and wanton misconduct may have been responsible for the perilous position in which he found himself. It confined the jury to occurrences shortly before the accident in question, and, in effect, told the jury in substance that if the appellant operated his automobile shortly before the accident in the manner which, in his judgment, was least likely to cause injury, in the face of a sudden emergency, he would be absolved from liability. This instruction is contrary to the law announced in the case of *Loehr* v. *Meuser, supra,* and *Pierce* v. *Clemens, supra.*

In the case of *Redd* v. *Indianapolis Railways* (1951), 121 Ind. App. 472, 97 N. E. 2d 501, this court said:

"This state is also thoroughly committed to the proposition that when a court, through an instruction, directs a verdict on condition that the jury finds from the evidence that certain facts exist, such instruction must recite all the facts and conditions essential to such a verdict. If an essential fact is omitted the instruction is erroneous and the error is not cured by supplying the omission in another instruction. *Union Traction Co.* v. *Elmore* (1917), 66 Ind. App. 95, 116 N. E. 837, and cases cited; *Dunbar* v. *Demaree* (1936), 102 Ind. App. 585, 2 N. E. 2d 1003."

The court did not err in refusing to give appellant's tendered instruction number 10.

Finding no reversible error, the judgment is affirmed.

Wiltrout, J., and Royse, P. J., dissent, with opinion.

## DISSENTING OPINION

ROYSE, P. J.—I do not agree with the conclusion of the majority in this case. It has always been my understanding that a party to litigation tried to a jury had a right to have his theory of the case explained to the jury by an instruction from the court when there was any evidence in the record to support such theory. In this case one of the chief contentions of appellant's defense was that a sudden cloud burst occurred which blinded appellant just before he attempted to pull off the road and stop. It was his contention this caused the accident in which appellee was injured.

The evidence of appellant was that he could see the road through the rain as he started down the hill, and then he said. "Well, I don't know just exactly

how far we had gotten down the hill, but there came a cloudburst and we got to where I could not see anything". He then started to stop and pulled off the pavement onto the berm of the road. If the jury had believed this evidence it would have been sufficient to sustain a verdict that appellant was not guilty of wanton or wilful misconduct.

I believe instruction No. 10 was a correct statement of the law applicable to appellant's theory of defense. *Sheets* v. *Stalcup* (1938), 105 Ind. App. 66, 69, 13 N. E. 2d 346. I find nothing misleading in this instruction. I find nothing in it which would confine the whole "factual situation to the moment of the catastrophe". It seems clear to me that this instruction, by telling the jury if they found appellee "was confronted with a sudden emergency which occurred without *any fault* on his part" (My emphasis), in effect told the jury they must consider all of the evidence relating to his operation of the automobile. In my opinion it was a correct statement of appellant's theory of defense. If appellee desired a more specific instruction she should have tendered it. In my opinion it would not be proper to attempt to state all of the facts concerning the long drive in one instruction. An examination of the record discloses the jury was adequately instructed on the law applicable to the other facts in this case.

The quotation from the case of *Loehr* v. *Meuser* (1950), 120 Ind. App. 630, 93 N. E. 2d 363, relied upon by the majority is not pertinent to the question presented in reference to this instruction. The quoted portion of that opinion relates to our rejection of appellant's contention that the evidence most favorable to appellee was not sufficient to sustain the verdict. It did not in any way refer to an instruction outlining the appellant's theory of defense.

I believe the trial court committed reversible error in refusing to give to the jury instruction No. 10, and therefore this case should be reversed.

Wiltrout, J., concurs in this dissent.

NOTE.—Reported in 106 N. E. 2d 693.